1              IN THE UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF COLORADO

3     Civil Action No. 12-cv-01334-CMA-KMT

4     ----------------------------------------------------------

5     CLINTON DAWSON, et al.,

6        Plaintiffs,

7     vs.

8     LITTON LOAN SERVICING, LP, et al.,

9        Defendants.

10    ----------------------------------------------------------

11         Proceedings before KATHLEEN M. TAFOYA, United States

12    Magistrate Judge, United States District Court for the

13    District of Colorado, commencing at 1:30 p.m. November

14    15, 2013, in the United States Courthouse, Denver,

15    Colorado.

16    ----------------------------------------------------------

17         WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

18    ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED...

19    ----------------------------------------------------------

20                         APPEARANCES

21         BLAIR DRAZIC, Attorney at Law, appearing for the

22    Plaintiff (by phone).

23    ----------------------------------------------------------

24                       MOTION HEARING

25

           AVERY/WOODS REPORTING SERVICE, INC. (303) 825-6119

1    APPEARANCES, CONT.

2         MARK WILLIS, Attorney at Law, appearing for

3    Defendant Litton Loan Servicing, LP.

4    -----------------------------------------------------------

5                       P R O C E E D I N G S

6         (Whereupon, the within electronically recorded

7    proceedings are herein transcribed, pursuant to order of

8    counsel.)

9         (REPORTER'S NOTE:  Speakers appearing by telephone

10   were difficult to understand.)

11        THE CLERK:  All rise.  Court is in session.

12        THE COURT:  Good afternoon, everyone.  Please be

13   seated.

14        This is Judge Tafoya speaking.  We are gathered

15   in case -- or Civil Action Number 12-cv-1334.  The case

16   is Clinton J. Dawson and Janell Dawson, Plaintiffs,

17   versus Litton Loan Servicing, LP, and Ocwen Loan

18   Servicing, LLC.  May I have appearances first for

19   plaintiff by phone?

20        MR. DRAZIC:  Blair Drazic for the plaintiff, Your

21   Honor, and I have Mr. Chris Wyatt on the telephone with

22   me.

23        THE COURT:  All right.  Mr. Wyatt, can you hear

24   me?

25        MR. WYATT:  Yes, Your Honor, I can.

1          THE COURT:  All right.  And Mr. Drazic, you can

2     hear me all right?

3          MR. DRAZIC:  I can, yes.

4          THE COURT:  All right, good.  And for defendant?

5          MR. WILLIS:  Good afternoon, Your Honor.  Mark

6     Willis on behalf of the defendants Litton Loan Servicing,

7     LP, and Ocwen Loan Servicing, LLC.

8          THE COURT:  All right.  Good afternoon.  We're

9     here, and I thank all of you for making yourselves

10    available on this short notice.  The reason that I did

11    shorten the time so substantially and wanted to talk to

12    you right away is it appeared to me, based on what I

13    read, that this could be handled in a very short order.

14    Now, I may be wrong about that when I hear from both

15    sides, but this did not seem to me to be something that

16    would take a long period of time.

17          There is a motion for leave to take the

18    deposition of witness Chris Wyatt.  Now also is a motion

19    for extension of time, which I note, and I'm not sure

20    whether this is intentional or not, but the motion for

21    extension of time to file the response to the motion for

22    summary judgment has not been referred to me.  And I

23    think that's probably because the summary judgment motion

24    is pending before Judge Arguello.  But I think we can

25    still talk about an extension.  I could probably

1    recommend that she extend it verbally, in the minutes,

2    and I can send her an e-mail telling her that I've done

3    that.  I don't think she would have a problem with it.

4    But I think the reason it wasn't referred for my

5    resolution is because, you know, it has to do with

6    something before her.  So with that kind of speech about

7    the status of the case, I'd like to talk to both sides

8    about the deposition that's sought.

9          As I understand it, and I'll direct this a little

10   bit at Mr. Wyatt, but of course, Mr. Drazic, you may want

11   to respond, is that -- and I need you to clear this up

12   for me, because for some reason, Goldman Sachs, and I

13   don't know what method they use, but apparently has told

14   Mr. Wyatt that because of some -- something, I don't know

15   what it is, he can't voluntarily give an affidavit in the

16   case.  I'm assuming that that must have to do with some

17   kind of settlement agreement or nondisclosure agreement

18   or something that -- that he may have had with somebody.

19   I'm not sure, so I'd like to know what that is.  But I'm

20   also assuming for purposes of this, so correct me if I'm

21   wrong, that -- that whatever that agreement is, there's a

22   clause in there that exempts being subpoenaed or ordered

23   by a court to do something; that it's the voluntary

24   nature that would be prohibited, which is pretty standard

25   in agreements like that.  So if that's the case, then

AVERY/WOODS REPORTING SERVICE, INC. (303) 825-6119

1        that's one thing.

2               The other issue, of course, is whether or not the

3        deposition should be allowed outside of the discovery

4        period.  I think that's tempered a bit.  You know,

5        normally the answer would be no, but I think that's

6        tempered by the fact that apparently everyone knows about

7        Mr. Wyatt as a witness.  He was part of the initial

8        disclosures last summer -- well, or early fall, and --

9        which would be a supplement.  And he was prepared to give

10       an affidavit, which of course would be perfectly

11       appropriate to attach to a response to a motion for

12       summary judgment.  But for whatever reason, this

13       whatever-it-is is preventing him from doing that.

14              So perhaps, Mr. Drazic, you could address this

15       first, or Mr. Wyatt, if you want him to speak to it.

16       What is it that prevents him and what's your position on

17       that?

18              MR. DRAZIC:  Well, Your Honor, it's our position

19       that our clients are at limited means.  They had prepared

20       this case to present Mr. Wyatt by affidavit.  Goldman

21       Sachs, who has approached him, has no standing in this

22       thing, because any agreement he would have had would be

23       with the defendants in the courtroom today.  Goldman's

24       lawyer from Solomon & Cromwell it's my understanding

25       approached him after he sent a copy of the affidavit,

1      which I think Mr. Willis will admit he received a copy of

2      my draft affidavit from the Goldman Sachs lawyer, told

3      him he can't sign it.  Then I'd ask Mr. Wyatt to pitch in

4      and let you know the details, so that -- this came as a

5      total surprise.  We were preparing our full response.  So

6      all cases center around Mr. Wyatt.

7             As a matter of fact, the deposition, the 30(b)(6)

8      of the defendant, was 74 pages with about 70 pages of "I

9      don't know."  And with Mr. Wyatt's testimony, we were

10     going to just read the I don't know against.  If

11     Mr. Wyatt is stopped from testifying, it throws the whole

12     thing into chaos.  I'll let him describe that for you.

13            THE COURT:  All right.  Mr. Wyatt, tell me what

14     you know about it.

15            MR. WYATT:  Well, Your Honor, for about -- I left

16     Litton Loan Servicing in April of 2010.  I did not

17     sign -- I was offered a settlement and release agreement

18     at -- prior to my leaving Litton.  Essentially, that

19     agreement said I couldn't work in the mortgage industry

20     for two years, and they would pay me $10,000.  I declined

21     to sign that agreement.

22            There was a employee handbook that I don't recall

23     signing.  I -- they assert I did sign.  There is a --

24     it's a one-page disclosure thing.  And I've kind of

25     argued back and forth over the last three years with

1      Goldman Sachs that that wouldn't prohibit me from

2      providing information in connection with the cases that

3      may be out there.  What it prohibits me from doing is

4      talking about -- this is my layman term, Judge -- talking

5      about litigating cases that I was involved in, my

6      communications with outside counsel in connection with

7      those cases, from disclosing a -- a -- I guess an account

8      list and those types of things.

9              Goldman Sachs, Mr. Brass (phonetic) in Goldman

10     Sachs, I got a letter from Litton saying you tell them

11     that I was approached by somebody or was going to do

12     something that I'd have to get their permission to do.

13     In that case, I sent them the affidavit that I had

14     prepared in connection with this case.

15              UNIDENTIFIED SPEAKER:  Your Honor --

16              MR. WYATT:  Over the last three,

17     three-and-a-half-year period, you know, I've come to

18     realize it doesn't (inaudible) think that you can -- you

19     can say the things (inaudible) bring up issues in

20     connection with things with no retribution.  But over the

21     last three or three-and-a-half-year period, I've come to

22     understand that Goldman Sachs carries a very heavy hand.

23     And so in that case, given the direction of Goldman Sachs

24     and Mr. Brass, I indicated to Counsel that I did not

25     think I can (inaudible) the affidavit; but if he wanted

1    to subpoena me for a deposition or something, then -- or

2    I had a court order, that, you know, I would be required

3    to appear.  And that's kind of how it came about, Your

4    Honor.

5          THE COURT:  All right.  Let me ask Mr. Willis,

6    then.  What -- what's your position on this, first, with

7    respect to the -- whether or not he can testify

8    voluntarily, which is really what we're talking about, or

9    if he needs a court order?  And then we'll take up the

10   issue whether or not it should be allowed outside the

11   discovery period.

12         MR. WILLIS:  Sure, Your Honor.  I really don't

13   have a position on whether he can testify or turn in an

14   affidavit.  I'm not privy to the document.  I haven't

15   seen the document.  I don't represent Goldman.  And so I

16   really can't opine on that.  And whether the Court orders

17   him to do the affidavit or do a deposition, I don't -- I

18   have some other issues with the deposition itself, but I

19   don't have a specific position on that.  It's -- it's not

20   my client.

21         THE COURT:  Well, Litton is your client, right?

22   And Ocwen is your client?

23         MR. WILLIS:  Litton is my client.  It might help

24   just a little bit to give you a little bit of background

25   here.  Ocwen purchased Litton from Goldman Sachs.  And

1    Litton remains a -- Mr. Wyatt might know that date better

2    than I do, but Litton is a legal entity.  It doesn't have

3    any employees.  The way that the structure of it works,

4    Ocwen purchased the partnership interest in it.  But --

5    so that's the connection with Goldman.  So, but prior to

6    that, Goldman had owned -- purchased Litton, and so I

7    think the document at play may be a Litton document.  But

8    it isn't Litton that has told Mr. Wyatt he can't testify

9    here.  It was from Goldman.

10           THE COURT:  All right.  So as far as your client

11   Litton, who is the defendant in this case, is concerned,

12   you're not asserting any prohibition on Mr. Wyatt to

13   testify?

14           MR. WILLIS:  No, Your Honor.

15           THE COURT:  All right.  Okay.  So anything you

16   need to add to that, Mr. Drazic?

17           MR. DRAZIC:  I don't think -- I think, Your

18   Honor, if Mr. Wyatt wants to correct me if I'm wrong, if

19   you would order him to -- to sign a truthful affidavit, I

20   think that would resolve the problem.  Because then if

21   Goldman tried to attack him for it, he'd be -- it would

22   be an illegal bargain, because he's going against -- be

23   going against the order of court, and we could dispense

24   with the depo.

25           THE COURT:  Mr. Wyatt, does the -- does the thing

         AVERY/WOODS REPORTING SERVICE, INC. (303) 825-6119

1    that you may have signed or may be bound by in the

2    employee handbook specifically talk about subpoenas, or

3    does it talk about court orders, or both?

4        MR. WYATT:  No, it doesn't -- there isn't any

5    provision in there related to a court order or anything

6    else.  And quite frankly, you know, (inaudible) with

7    Goldman Sachs in connection with things that I've tried

8    to give you.  I tried to bring a (inaudible) max, and

9    then Goldman -- Mr. Brass said I couldn't do it.  In

10   fact, Mr. Brass has repeatedly told me that I cannot say

11   anything or use anything that I learned during my tenure

12   at Litton in connection with any matter.  And, you know,

13   I looked them up, and this guys's a high-powered lawyer.

14   And I don't want to cross any lines here, because it all

15   is by leaving and trying to bring things to light that

16   were probably not (inaudible), were probably (inaudible)

17   tenure at the company.  It so adversely affected my

18   family, the fact that Goldman is so powerful.

19       THE COURT:  Well, let me -- let me say this,

20   then.  I think that given the status and the fact that

21   the Court doesn't know exactly what the document is

22   that -- that Goldman may be relying on, and I am not

23   going to assume that a lawyer is acting wrongfully or in

24   bad faith.  In fact, I think the presumption is that he's

25   acting correctly and in good faith until I hear

AVERY/WOODS REPORTING SERVICE, INC. (303) 825-6119

1    otherwise.  He must have some reason to believe that you

2    are bound by something.  So I'm going to read some law

3    into the record that I think controls in a case like

4    this.  And if Goldman wishes to challenge that, they're

5    going to have to overcome this law.

6         So let me tell you all that I think, as a general

7    rule, a witness belongs to neither plaintiff, nor the

8    defense, nor any other person.  Both sides of a

9    litigation have a right to interview witnesses before

10   trial.  That's U.S. v. Carrigan, 804 F.2d 599, a Tenth

11   Circuit case, 1986.

12        Citing a Ninth Circuit case, it's called Calahan:

13   Exceptions to the rule are justifiable only under the

14   clearest and most compelling considerations.  Citing a

15   U.S. Supreme Court, Dennis versus United States, 384 U.S.

16   855.  That's a 1966 case.

17        I have a case that I ruled on in 2009 called

18   General Steel Domestic Sales, LLC, versus Steelwise LLC,

19   and that can be found at 2009 Westlaw 185614,

20   January 23rd, 2009, that I've used and gone back and

21   looked at some of this log and -- now, obviously, the

22   General Steel case, because it is issued by a magistrate

23   judge, is not binding on anyone.  But it has, I think,

24   been cited favorably in several different contexts and

25   was never overruled.  So I think the law there is pretty

1    clear:  If a third-party witness refuses to voluntarily

2    cooperate or can't cooperate with a party to a lawsuit,

3    the Federal Rules of Civil Procedure contemplate

4    appropriate procedures for compelling a witness to

5    provide deposition testimony which can later be admitted

6    at trial, if appropriate.  If a witness whose deposition

7    testimony is sought refuses or cannot testify out of

8    concerns for either confidentiality obligations or

9    nondisclosure obligations, the deposing party may move to

10   compel cooperation pursuant to Federal Rule of Civil

11   Procedure 37(a)(2)(B).

12        This is essentially what has happened here,

13   although it is coming up in a bit of a different context.

14   But I consider the witness to be refusing because he has

15   been threatened that he cannot voluntarily give an

16   affidavit.  So that is tantamount to a refusal.  So I

17   think that's what this comes down to, although there's no

18   wrongful or mean-spiritedness about Mr. Wyatt.  He's

19   simply needing some protection here.

20        Now, all that said, the opposing party, which in

21   this case would be Litton, versus Ocwen, and we're going

22   to take this up later, may oppose a motion to compel or

23   move for a protective order.  And, of course, Litton is

24   here.

25        The court is the protector of the purity of its

AVERY/WOODS REPORTING SERVICE, INC. (303) 825-6119

1    own process and may take such steps as are necessary to

2    protect against its abuse on its own motion or upon the

3    suggestion of a stranger, and neither state statutes nor

4    ordinary procedural rules can thwart the prompt and

5    efficacious, I think, discharge of that paramount

6    obligation.   I'm reading a direct quote from Pueblo de

7    Taos versus Archuleta, 64 F.2d 807, Tenth Circuit, 1933.

8        They also cite a case that I have looked at as

9    well, Gumbel versus Pitkin, which is a Supreme Court

10    case, 124 U.S. 131.   That is 1888, so the language is

11    somewhat strange, but there.

12        Now, in the context of settlement agreements,

13    which it doesn't sound like this is a settlement

14    agreement, but rather an agreement that was between

15    Litton and/or Goldman Sachs, and Mr. Wyatt as part of his

16    employment, but nonetheless, confidentiality may be a

17    paramount concern to the parties in certain kinds of

18    situations.   I don't think this is really subject to

19    settlement per se; but the same kind of rules apply,

20    because an employee agreement, in my view, can be a

21    contract between two people.   And that's what I'm hearing

22    from what all the parties have told me.   In other words,

23    there is a contract between Mr. Wyatt and Litton and/or

24    Goldman prohibiting him from voluntarily disclosing

25    certain information.

1            Courts regularly enforce confidentiality

2    agreements where the parties are involved in a purely

3    private contractual matter that's not really reviewed by

4    the court in any way, which it sounds like that would be

5    the case here.  Exceptions to the traditional enforcement

6    of confidentiality agreements, though, are sometimes made

7    when the case is one of legitimate public interest or

8    involves a governmental body.

9            Now, this does not involve a governmental body,

10    but I think that this is a legitimate public interest

11    matter, even though it is just a private litigation,

12    because it involves certain allegations that have some

13    pretty wide ramifications in the public arena.  All the

14    foreclosures that were undertaken during a certain period

15    of time and the effect that that had on the economy, or

16    vice versa.  It was somewhat of a circular situation.  So

17    I do think this case has some public policy

18    ramifications.

19            One of the factors to be considered by the court

20    in examining confidentiality clauses is whether the

21    public may suffer from the confidential nature of the

22    contract if -- if a party is trying to cover something up

23    through confidentiality agreements.  I can't find that

24    Goldman or Litton was trying to cover anything up here.

25    I don't really know exactly what the agreement says, but

AVERY/WOODS REPORTING SERVICE, INC. (303) 825-6119

1    it seems like it's an agreement that happens when a

2    person becomes employed rather than after they know

3    something.  So that's not a cover-up.  That's just an

4    agreement; you're not going to talk about what we do

5    here, essentially.  So I'm not implying any wrongdoing

6    here that anyone's concealing anything, but the

7    ramifications of telling someone in -- that they cannot

8    talk about something of public interest is similar to a

9    cover-up.  So while it may not have been a cover-up then,

10   it might be a cover-up now, and kind of smells of that to

11   me in this case, frankly.

12           Non-cooperation clauses, which I think this is,

13   so it's kind of a -- it appears to be kind of a hybrid,

14   confidentiality non-cooperation, can only apply legally

15   to voluntary cooperations.  Private parties cannot

16   contract to prevent the disclosure of information

17   pursuant to a valid subpoena.  And again, this goes back

18   to a witness does not belong to anyone.  A witness is a

19   witness.  They have facts.  And so therefore, you have to

20   look at these things pretty closely.

21           The courts have held pretty unanimously, and I'll

22   give you some cites, that non-cooperation clauses

23   prohibiting voluntary assistance in private litigation

24   are valid and enforceable as long as the non-cooperation

25   clause does not prohibit participation in litigation

1    under subpoena or other court process.  And let me just

2    give you the cases that support that.  It's Yockey v.

3    Horn, 880 F.2d 945, Seventh Circuit, 1989.  Also Trading

4    Techs International, Inc., versus eSpeed.  And that's

5    kind of like an iPad.  The E is small, capital S, eSpeed,

6    Inc., 2008 Westlaw 23385, Northern District of Illinois,

7    2008.  Quad Graphics, Inc., versus Fass, 724 F.2d 1230,

8    Seventh Circuit, 1983.

9        And then again, the General Steel case that I

10   referenced to you that I was the author of the opinion,

11   and again, that's 2009 Westlaw 185614, 2009.  In that

12   case, I struck down a non-cooperation provision that was

13   part of the settlement agreement because it was contrary

14   to public policy.  And I found, having looked at the

15   provision itself and how it was being used, that in that

16   case, it served only to block defendants from

17   interviewing important and potentially informative

18   witnesses; which I'm not making that finding here because

19   I don't know if that applies or not.  And it sounds like

20   it doesn't, frankly.

21       So I think that in -- to be on the safe side of

22   this case, to the extent that Mr. Wyatt should give

23   information that it does sound like is fairly vital in

24   this case to the plaintiffs, it would have to be under

25   court process.  I do not think that it would be adequate

1    protection for him to merely have the court order that he

2    provide a voluntary affidavit.  That is subject to a

3    little bit too much voluntariness, I think, under the --

4    under the law.  So in order to be absolutely precise, I

5    think that the best way to go about this, if we do it at

6    all, is to have a deposition upon regular notice, with a

7    subpoena.  And I think that protects Mr. Wyatt, which is

8    what I'm concerned about with this part of the -- of the

9    proceedings.

10    So I'm not going to order that he do it by

11    voluntary affidavit.  Even though, frankly, that's

12    certainly the easiest and most expedient way to do it,

13    I'm just a little wary of doing that because of the fact

14    that I think it's a bit odd that Goldman has contacted

15    him and told him he can't give truthful testimony in this

16    case anyway.  So given that odd behavior of Goldman, and

17    without hearing from them, because they don't have a

18    representative here today, I think the better course

19    would be to have a deposition.

20    Now, that said, let me hear from you, Mr. Willis,

21    on why you think at this stage such a deposition would

22    not be appropriate.

23    MR. WILLIS:  Thank you, Judge.

24    First of all, thank you for looking at this

25    issue.  And I apologize, I think to some extent, for when

AVERY/WOODS REPORTING SERVICE, INC. (303) 825-6119

1   this got set, yes, on Wednesday evening, there was an

2   opportunity for me to file a response.  And I had

3   informed your clerk that I would love to file it, but I

4   was filing something that evening, and then in a

5   mediation yesterday and couldn't.  But after listening to

6   your very thorough analysis here, I feel that what I'm

7   going to tell you is -- might have made this easier for

8   you, and I apologize for any burden that was there.

9        There is no cover-up here.  It's actually the

10  opposite.  We don't believe that Mr. Wyatt has any

11  personal knowledge, any relevance, any -- any connection

12  whatsoever to this loan; doesn't know the Dawsons, hasn't

13  been involved, wasn't involved in any of this process.

14  This isn't a punitive class action.  It isn't related to

15  a Statewide loan.  I know that that -- those allegations

16  were in the complaint.  But in the summary judgment

17  motion, it basically comes down to the Colorado Credit

18  Agreement Statute of Frauds.  This is about a single loan

19  modification.

20       So the issue that I had in my opposition to the

21  motion -- and incidentally, Mr. Drazic and I have gotten

22  along very professional and it hasn't been any adversary

23  there, was I was concerned with two things.  I was

24  concerned, A, with the timing, in that we had already

25  filed the summary judgment motion, and I didn't want this

1    to be kind of a back door Rule 56(f) way of putting in

2    things that would have been addressed earlier when

3    Mr. Wyatt was disclosed in July.  We tried to get that

4    motion filed after discovery was closed, and we did that

5    because I don't like to attach additional responses or

6    evidence to (inaudible) support.  So that was the first

7    issue.

8         The second issue was dealing with relevance.  I

9    anticipated -- and I have talked with Mr. Drazic, and

10   earlier he referenced me seeing a draft of his proposed

11   declaration.  I saw that in connection with -- there was

12   an initial summary judgment motion filed by the attorney

13   who I substituted in for.  And I had seen the substance

14   of that, and I told Mr. Drazic I did not believe those --

15   any of those statements in there.  I thought the Court

16   would strike them as incompetent summary judgment

17   evidence.  They're just no personal knowledge, and kind

18   of rambling about things that don't relate to this case.

19   So my opposition was I didn't want my clients to go spend

20   money on this deposition or come in here and let the

21   Court say, yes, this is tantamount, important evidence,

22   when then I'm going to be turning around and saying it's

23   incompetent and we don't think it has any relevance here.

24        With that being said, I also, with respect to

25   kicking out the summary judgment response time frame, I

1    understand that didn't get referred to you.  I noticed

2    that earlier.  Again, I realize that Mr. Drazic's been

3    put into a really odd situation here.  And we're both

4    professionals, and I am comfortable with whatever the

5    Court does here, not anticipating what it will do.  I

6    just want to make sure that we get the summary judgment

7    put on a correct path, because we've got a number of

8    other holidays and other things that are coming up.  So

9    I'm sorry if you spent so much time here looking at this

10   particular issue.

11        And the other thing I wanted to let the Court

12   know, I mean, my clients have had nothing to do with this

13   interjection or thinking it's a cover-up or anything to

14   do with that.  I don't know what's happening between

15   Goldman and Mr. Wyatt.  And I do know that the plaintiffs

16   in this case have a separate action they filed against

17   Goldman.  So maybe that testimony might be relevant to

18   that.  I don't think it's relevant to that here.

19        THE COURT:  Well, let me just ask a couple of

20   questions on the relevancy issue, then.  Mr. Wyatt,

21   when -- were you -- you were actually employed by Litton?

22        MR. WYATT:  Yes, ma'am.

23        THE COURT:  And what dates were you employed?

24        MR. WYATT:  June 2001 to April 2010.

25        THE COURT:  All right.  And Mr. Drazic, I'm

1    sorry, but this will save me from looking at the

2    complaint.  What dates do you allege Mr. Wyatt has any

3    information about?  I understand he may not have personal

4    knowledge about this -- this particular loan, but I do

5    want to make sure that his personal knowledge of Litton

6    procedures, which is what I understand you're going to

7    try to offer him for, is within the relevant time period.

8         MR. DRAZIC:  Yes, Your Honor, it's exactly that

9    time period.  It was right after -- it was right around

10   the time HAMP was implemented.  And basically, we have

11   circumstantial evidence in the forms of records that make

12   no sense.  And Mr. Wyatt gives the explanation, Goldman

13   told him to basically tell people in writing they can

14   apply for modification, and then deny everybody.

15        THE COURT:  Well, when did your -- your

16   plaintiffs first ask for modification, then?

17        MR. DRAZIC:  It was late -- what was the year?

18   It was -- I think it was late -- it was right at about

19   that time.  It was like November of '09, as I recall.

20   Let me look it up.  I've got a record.

21        MR. WILLIS:  If it may --

22        (Inaudible)

23        MR. WILLIS:  August of 2009.  But where I was

24   going with this, Your Honor, is for some reason, I'm not

25   quite sure how this happened, because Judge Arguello's

AVERY/WOODS REPORTING SERVICE, INC. (303) 825-6119

1    opinion in this -- on the motion to dismiss -- this was

2    prior to my involvement -- was all about HAMP, HAMP

3    modifications.  And I believe Mr. Wyatt's testimony is

4    about HAMP modifications.  The complaint all deals with

5    HAMP modifications.  But there is no HAMP modification in

6    this case.  There never has been and -- there's no HAMP

7    modification.

8              THE COURT:  Well, isn't that the point, though,

9    is that they wanted one and didn't get one?

10             MR. WILLIS:  No.

11             THE COURT:  No?

12             MR. WILLIS:  No.

13             MR. DRAZIC:  Not -- the point is loss mitigation,

14   Your Honor.  It's a broader topic.  And what happened

15   here is Mr. Wyatt's testimony is what met its proprietary

16   plans that he used -- that they used very successfully,

17   made a lot of money for the trusts and themselves.  They

18   developed this over painstaking years of development.

19   And their proprietary plan determined that the trust who

20   owned this loan -- Litton didn't own it, Goldman didn't

21   own it, and Ocwen didn't own it -- would make $69,000

22   more by not foreclosing on these people.  But Goldman

23   wanted its advances back, so they foreclosed on everyone,

24   to the $69,000 disadvantage of the investors who

25   entrusted their money to Litton Loan Servicing.

1        THE COURT:  Well, I think -- I remember this now.

2    I think that given the very broad scope of Rule 26 -- and

3    I'm just looking at Judge Arguello's order, but I will

4    tell you I didn't look at it before this hearing, so I'm

5    not going to be able to make any sense out of it just

6    sitting here very quietly and quickly.  It's a 20-page

7    order, actually 21-page order.  So -- but I think that

8    under the circumstances that have arisen, and the very

9    broad stroke that Rule 26 has, there is some reason to

10    believe that Mr. Wyatt's testimony could lead to

11    admissible evidence.  So -- because I don't know exactly

12    what he's going to say.

13        So I think that the deposition should go forward.

14    I do think it needs to go forward very quickly, though.

15    However, Mr. Drazic, you do need to prepare a regular

16    notice of deposition and a subpoena.  I don't know if

17    Mr. Wyatt is sitting there with you, but you could

18    probably hand it to him, if you could get it prepared.

19    But I don't want to do that unless all of you agree on a

20    date, and I'd like you to agree on it now while I'm

21    sitting on the bench.  And let's put it on the record.

22        MR. DRAZIC:  Mr. Wyatt is in Houston and I'm in

23    Grand Junction.

24        THE COURT:  Oh, okay.  So there's got to be some

25    time --

1           MR. DRAZIC:  That's good, though.  He has some

2      issues that he needs to talk to the Court about.  I will

3      make myself available.

4           THE COURT:  All right.  Mr. Wyatt?

5           MR. DRAZIC:  Pretty --

6           THE COURT:  Mr. Wyatt, what are your issues on

7      availability?

8           MR. WYATT:  I have one issue.  My brother-in-law

9      is in need of a kidney transplant; and my wife, his

10     sister, is donating her kidney to him.  And that surgery

11     has been scheduled for December the 10th.  He does have

12     pre-ops I think a week or two before that.  So I would

13     just say, you know, around that time period maybe from

14     December 1st to -- the surgery is scheduled for the 10th,

15     maybe a few days after that.  I don't know how they want

16     to take this deposition, whether it be in person or over

17     the telephone.

18          THE COURT:  Well, there's a number of different

19     ways.  I mean, it can be done on the phone.  It can be

20     done by video.  You know, we now have Skype and other web

21     conferencing kind of capabilities that I find pretty

22     good.  I would think, if everyone's agreeable, could you

23     agree on a day to do it that's before December 1st?

24     Because I think your wife's probably going to need you.

25     I don't think that's, you know, just a routine kind of

1   surgery.  So I --

2         MR. WYATT:  That's very (inaudible) and Your

3   Honor, I will tell you we had it set for the 19th of this

4   month, but it becomes fluid because you have two people

5   and, you know, certain cuts here and certain cuts there.

6   So I want the Court to know that it is scheduled for the

7   10th; but given our experience so far, that date could be

8   a little bit fluid.

9         THE COURT:  All right.  Well, let's start by

10  this.  Does anybody have any problem with either taking

11  the deposition by phone or video?  Can you both agree on

12  that?  What do you think, Mr. Drazic?  I'll ask you

13  first.

14        MR. DRAZIC:  I will do it.  I do that regularly.

15        MR. WILLIS:  I have no -- no problem whatsoever,

16  Your Honor.

17        THE COURT:  All right.  So it will either be by

18  phone or video, then, Mr. Wyatt.  And so that means you

19  don't have to leave your place of residence.  Is there a

20  day in the next two weeks that you could actually get

21  that done?  We've got Thanksgiving in there on the 28th,

22  but that leaves you, you know, next week.  Towards the

23  end of next week would probably be okay or the beginning

24  of the week following?

25        MR. WYATT:  Yes.

 1          THE COURT:  What -- what -- how does your -- how

 2     long do you think this will take, Mr. Drazic?

 3          MR. DRAZIC:  I think I'll be done in a half hour

 4     to 45 minutes.

 5          THE COURT:  All right.

 6          MR. DRAZIC:  Then it depends on how long the

 7     cross is.

 8          THE COURT:  What do you think, Mr. Wills?  I

 9     mean, you kind of know what he's going to ask, because

10     you have seen the affidavit.

11          MR. WILLIS:  Yeah.  I -- I'd probably say, you

12     know, a half hour, 45 minutes.  I mean, I don't know what

13     he's going to say at the deposition.  I saw what was in

14     the affidavit.  So --

15          THE COURT:  Well --

16          MR. WILLIS:  -- that would be five to ten

17     minutes.

18          THE COURT:  Okay.  Well, I think if you -- if you

19     could set aside a three- or four-hour time block, you

20     know, one morning or one afternoon, maybe that would do

21     it.

22          So what's your available -- availability,

23     Mr. Willis?  Let me ask you first, then.

24          MR. WILLIS:  There's just -- there's a lot of

25     (inaudible) right now with the holidays and briefing

1     schedules and stuff like that.  Maybe it's better to

2     start with that group.  I have a hearing on the 21st.

3     I've got another hearing on the 22nd.  I've got --

4     surprisingly, plaintiffs apparently don't like banks; so

5     I've got -- we've been in your court here one or more

6     times.  And I've got -- so we can -- we'll work with

7     Mr. Wyatt and his wife's schedule and Blair.  Maybe we

8     ought to start with them, and I can see where I can fit

9     it in while we're talking.

10          THE COURT:  All right.  What do you think,

11    Mr. Drazic?

12          MR. DRAZIC:  Well, I just want to make sure it

13    gets taken, Your Honor.  I will -- you know, subject to

14    another court order, I will make myself available if it

15    has to be Sunday morning at six o'clock a.m.  But I just

16    want to get it in.  That's all I care about.

17          THE COURT:  Well, that's kind of why I started

18    with Mr. Willis, because I thought that was how you were

19    feeling.

20          Mr. Wyatt, over the next two weeks, what's your

21    availability?

22          MR. WYATT:  I know -- I know I'm not available on

23    the 19th, 20th, and 25th.  Those are the only dates that

24    I'm not available.

25          MR. WILLIS:  If I may, Your Honor.  Is it -- it

1     would be substantially easier for me to do it in the back

2     half of the first week of December.  I don't know if

3     that's too far out.

4           THE COURT:  Well, see, this is -- he can't file a

5     response until he gets this deposition.  So that's why I

6     want it sooner rather than later, because I'm going to

7     have to, you know, persuade Judge Arguello that it's okay

8     to extend this.

9           MR. WILLIS:  To -- right.  So --

10          THE COURT:  How about the 26th of November?  You

11    don't have to travel, so, you know, the holiday is not

12    important for travel.  That's a Tuesday.

13          MR. WILLIS:  Yes, I can -- I can make that

14    happen.

15          THE COURT:  All right.  So can you, Mr. Drazic?

16          MR. DRAZIC:  In fact, Your Honor, the only

17    problem we would have is we are supposed to be in front

18    of you on that date at 9:30.  So that's for the final

19    pretrial, which I think it will be continued.  So subject

20    to that, I'm fine.

21          MR. WILLIS:  I thought Your Honor had moved that

22    till --

23          THE COURT:  I think I have, because I don't see

24    it on my calendar.

25          MR. WILLIS:  Yeah.

1          MR. DRAZIC:  Oh, that may be the old date.

2          MR. WILLIS:  Yeah.

3          MR. DRAZIC:  I'm sorry.  I think that was the old

4      date.  Okay.  I apologize.

5          THE COURT:  January 16th my courtroom deputy says

6      now.  So -- but I would have moved it.  I would have

7      moved it anyway because, you know, I don't want to have a

8      final pretrial, you haven't even filed your -- well,

9      you've filed your dispositive motions, but they aren't

10     briefed.

11         So why don't we say it will be on November 26th.

12     I'll leave it up to you all to work out the times to set

13     it.  Maybe, you know, given a court reporter's schedule

14     or whatever, however you're going to record this.

15     Regardless, you need some kind of a verbatim transcript.

16     Is there any objection to anyone recording it

17     unofficially while it's going on, so that you can use it

18     to draft your response?  Or I guess you can get a

19     quick --

20         MR. WILLIS:  I was going to say I think, Blair,

21     you'll probably get an E-tran, right, like the next day?

22         MR. DRAZIC:  Yeah, but they have to type it up.

23         MR. WILLIS:  Yeah.

24         MR. DRAZIC:  But I don't care.  Yes, we will.

25         THE COURT:  All right.  There's not much to it

1    anymore.  You know, they come typed almost.  They have

2    some -- you know, kind of like Siri, they have some weird

3    words in there every now and then, but -- all right.

4         So let's say for -- everyone's agreed on

5    November 26th.  Now, let me ask you, then, Mr. Drazic, if

6    you get -- let's assume the deposition goes, everything's

7    fine.  You have a few days, and there's a holiday in

8    there, because there's Thanksgiving on the 28th.  So

9    given all -- all things considered, when can you file

10   your response?

11        MR. DRAZIC:  Let's say -- can we have till the

12   7th?

13        THE COURT:  I'm -- I'm not going to tell you yes,

14   because like I said, it's not in front of me.

15        MR. DRAZIC:  And that's my bad.  I should have

16   called her chambers and given them a heads-up.  I

17   apologize.

18        THE COURT:  That's okay.  I'll call her.  But

19   let's say I'll recommend that she grant the motion to

20   extend your response date to December 10.  Any objection

21   to that, Mr. Willis?

22        MR. WILLIS:  No, I have no objection.  Just that

23   will make my reply when Santa comes.

24        THE COURT:  Right.

25        MR. WILLIS:  Right around that time.

1           THE COURT:  So, yeah, 14 days would be the 24th.

2     So that's Christmas Eve.  So what do you need?

3           MR. WILLIS:  Well, probably realistically, maybe

4     like the 10th of January, that week?

5           THE COURT:  Okay.  That's pretty far out, but I

6     think that would be okay.  You know, if you're going to

7     go -- if you need till the 10th of January, then maybe

8     Mr. Drazic could have till the 13th of December?

9           MR. WILLIS:  Yeah.  I have no problem with

10    whatever time he needs to get the transcript in and to

11    put it in there.  I would need -- I would want to get it

12    before the -- that week, the holiday week there on the

13    23rd.

14          THE COURT:  Okay.  So maybe even the 16th.  How

15    about December 16th for a response, Mr. Drazic, and then

16    January 10 for a reply?

17          MR. DRAZIC:  That would be fine.

18          THE COURT:  All right.  So I will recommend that

19    to Judge Arguello.  Because the time frame's coming up,

20    and your response is otherwise due, I think, Monday, I'm

21    going to probably call her when we get through and just

22    make sure that's okay.  If it's not okay, she'll let you

23    know by minute order one way or the other.

24          MR. DRAZIC:  Right.

25          THE COURT:  So it will be an order granting or

                AVERY/WOODS REPORTING SERVICE, INC. (303) 825-6119

1    denying.

2              MR. DRAZIC:  Okay.

3              THE COURT:  Okay?

4              MR. DRAZIC:  Okay.  I understand.  Yes.

5              MR. WILLIS:  I wonder if it makes sense to --

6    that is an unopposed motion now.  I think you brought it

7    as a motion.  And I think we were both thinking it would

8    get referred to you, because we put in there in the

9    conferral that we were going to be having this

10   conference.  I mean, if that helps that out, I have no

11   problem if Mr. Drazic wants to file an unopposed motion

12   for those dates too.

13             THE COURT:  Well --

14             MR. DRAZIC:  That might be --

15             THE COURT:  I'll just tell her that the motion as

16   it stands now appears to be opposed, but that you have

17   put on the record today at our hearing that it is now

18   unopposed if we do these dates.

19             MR. WILLIS:  That's fine.

20             THE COURT:  Okay.  Do you think that takes care

21   of everything?

22             MR. DRAZIC:  It wasn't even -- it was neither

23   opposed nor unopposed.  We knew there had to be some

24   relief.  That's why I put in the certification that we

25   would discuss it on the telephone today.

1          THE COURT:  Right.  And frankly, I will tell you

2     that had I noticed she hadn't referred it, I would have

3     called her ahead of time.  But I didn't notice until I

4     was sitting here.  And then I started flipping through

5     the motions, and I thought, oh, shoot, that one's not

6     referred yet.  So -- and I really don't anticipate any

7     problems with this unless there's something that I don't

8     know that's happened in this case.  I can't -- I usually

9     have no problem with something like this.

10          So Mr. Wyatt, you're going to get the notice and

11    the subpoena, so that you have both of those things.  And

12    so that it is official for the record, the Motion Number

13    68 for leave to take the deposition of witness Chris

14    Wyatt is granted.  And by that it means, Mr. Wyatt, you

15    are ordered to appear for the deposition, assuming that

16    you get the notice and the subpoena.  So if ever it comes

17    up, you have not only gotten subpoenaed by the party,

18    you've been ordered by the court, too.  Okay?

19          MR. WYATT:  All right.  Thank you, Your Honor.

20          THE COURT:  All right.  I'm not -- you know, I

21    have limited authority, frankly, I should say just for

22    the record, to really order you to do very much absent a

23    subpoena at this point.  But I'm just trying to protect

24    you, all right, so that all bases are covered if Goldman

25    looks at this, because I think it's important that

AVERY/WOODS REPORTING SERVICE, INC. (303) 825-6119

 1   witnesses be allowed to give their relevant testimony.

 2          Testimony that's not relevant, though -- and

 3   Mr. Drazic, I have to rely on you for this, as well as

 4   Mr. Willis, that I don't want Mr. Wyatt asked about

 5   things that are going to provoke Goldman into doing

 6   something.  He should be asked only about things that are

 7   relevant to this case, with every effort made to not

 8   violate, you know, whatever conditions he has with

 9   Goldman on other Goldman matters, all right?  Other cases

10   and other matters that should remain confidential that

11   aren't part of this case, he shouldn't be asked about.

12   All right?

13          MR. DRAZIC:  I understand that, Your Honor, yes.

14          THE COURT:  Mr. Willis?

15          MR. WILLIS:  Just since you were being official,

16   I thought we can -- we'll waive and I'll waive on the

17   record that 14-day deposition notice in the local rule,

18   if you need that.  So that's waived.

19          THE COURT:  All right, good.  Okay.  I think that

20   takes care of everything.  And Happy Thanksgiving to all

21   of you.  I probably won't see you before then.  And

22   Mr. Wyatt, I hope all goes well with your wife.

23          We will be in recess.

24          THE CLERK:  All rise.

25          (Whereupon, at 2:19 p.m. the proceedings were

          AVERY/WOODS REPORTING SERVICE, INC. (303) 825-6119

```
1        concluded.)

2              I certify that the foregoing is a correct

3        transcript, to the best of my knowledge and belief, from

4        the record of proceedings in the above-entitled matter.

5

6        /s/ Holly M. Faddis                December 18, 2013
         Signature of Transcriber                Date
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```